[Civ. No. 19560.   Second Dist., Div. Three.   Nov. 12, 1953.]

MABEL I. SCHOLZ, Respondent, v. WILLIAM A. SCHOLZ, Appellant.

Frank J. Kashare and A. L. Abrahams for Appellant.

James P. Brice for Respondent.

WOOD (Parker), J.—Defendant appeals from an inter-locutory judgment of divorce. He asserts in his brief that he appeals only from the part of the decree which states that certain improved real property is the separate property of plaintiff.

The complaint, filed on July 10, 1951, alleged extreme cruelty as the ground for divorce; and it alleged that the parties owned certain community personal property. The answer alleged that the community property included improved real property at 2319 and 2319½ Earl Street of the approximate value of $13,000. Defendant appeared at the trial in propria persona and contested only the allegations of the complaint pertaining to the property.

The court found that the parties were owners of the following community property: Hollywood Hair Dryer Company, and the machines and equipment used in the operation thereof which are encumbered by a mortgage in the amount of $2,464.28; certain household furniture and equipment; and two Ford automobiles. It found further that the improved real property at 2319 and 2319½ Earl Street (house and lot) in Los Angeles is the separate property of plaintiff, having been acquired by her on November 22, 1944, prior to her marriage to the defendant; and that on February 10, 1947, defendant executed a declaration of homestead thereon for the joint benefit of herself and defendant. The court awarded to the plaintiff the household furniture and equipment at the Earl Street addresses, the 1935 Ford automobile, and one-half the proceeds from the sale of the assets of the hair dryer company over and above the chattel mortgage. It assigned the homestead to plaintiff, free and clear of any interest the defendant may have thereunder. It awarded to the defendant the 1948 Ford automobile and one-half the proceeds from the sale of the assets of the hair dryer company.

Appellant contends that the evidence was not sufficient to support the finding that said real property is the separate property of plaintiff.

Plaintiff testified that in 1943 (prior to their marriage) she and defendant took up residence together; defendant told

her that if she would marry him he would buy a home for her; in 1944 they went to see the property on Earl Street, and decided that it was the home they wanted; she told defendant she did not have any money for the down payment, and he replied that he could borrow it; he borrowed $3,000 and gave plaintiff $500; she put the $500 in her checking account and wrote a check for that amount to "bind the deal"; escrow was opened in plaintiff's name, and defendant paid $2,500 into escrow as additional down payment on the house; the deed was executed in the name of "Mabel Iris Thompson," which was her name before she married defendant; she purchased the furniture which was in the house for $500 and signed a note for that amount; the house had five rooms, and there was an apartment of three rooms adjoining the house; at the time they purchased the property the house was rented for $85 a month and the apartment was rented for $50 a month; at that time defendant told her it would be her home—he would give it to her—and that the income from the property would pay for it; she made the payments on the house and on the furniture from said income; in 1944 she also purchased about $1,200 worth of furniture and paid for it with money which was her life savings; about six months after they had purchased the property they moved into the apartment; about a year later they moved into the house and rented the apartment for $50 a month; later they raised the rent to $75 a month; she and defendant were married December 21, 1946; at the time of their marriage the furniture in the house had been paid for; in February, 1947, defendant was working for Murphy Appliance Company, in which company he owned an interest; said company went into bankruptcy and defendant told her that his creditors would "attach the house" and for her to homestead it; she did not homestead it with any idea of giving defendant a half-interest in it; she never agreed that in case of divorce that the property should be shared and shared alike; in 1949 defendant forced her to sign a note for $3,495.30 and she also signed a mortgage covering said property, as security for the note, but she did not receive any of those funds; on August 1, 1950, she and defendant separated.

Defendant testified that at the time the house was purchased he was still married to his former wife; he, at no time, told plaintiff that he would buy a home for her—they purchased the home with the understanding that it would be "their home"; many times they said that if anything happened

they would share everything equally, and the reason the house was homesteaded in both names was that regardless of what happened to the business they would still have a home; when they separated it was "still decided" that they would share everything alike; later defendant went to see plaintiff's attorney who told defendant that he thought plaintiff was entitled to the home and he was going to see that she got it; the house and furniture were purchased for $10,500 and the payments on the house were $75 per month; the payments on the furniture, which cost $500, were $25 a month; at the time of their marriage the furniture was paid for; at the time of trial the balance due on the purchase price of the property was $1,200; he still owes the $3,000 (which he borrowed for the down payment) and he is paying interest on that amount; there is no lien on the house for said sum; prior to their marriage, plaintiff collected the rents and "turned" most of them over to defendant; after their marriage, plaintiff continued to collect the rents, and she gave them to defendant; defendant deposited them in his bank account and made the payments on the house and furniture from that source; the rent was not sufficient at all times to make the payments on the house—there was approximately $15 a month deficiency; defendant also paid the taxes and insurance on the property; when he was in business he borrowed money for business purposes and he used the home as collateral; when they separated the subject was brought up as to what there was to share since there were so many loans against the house, and he promised that he would sacrifice his business and pay the loans; he sold his business and paid the loans, except the $3,000; he paid about $9,000.

The evidence was sufficient to support a finding that appellant made a gift of the real property to respondent (wife). She testified that appellant told her that if she would marry him he would buy a home for her. She also testified that, when the property was purchased, appellant told her that it would be her home—he would give it to her. The title to the property was taken in her name. Statements of the trial judge indicate the basis for his finding that the property was the separate property of the wife. The judge said: "The Court has to find as between those two conflicting positions. And such a thing is not always easy to do. If the Court should find there was an agreement if the parties came to a parting of the ways it should be equally divided, then, I assume, that is what would have to be done; but if

it came to the conclusion that the plaintiff's version was correct and that it was a gift in promise of marriage, in consideration for a promise to marry, why, then, of course the Court would have to hold that it was not community property.'' The evidence presented a question of fact as to whether the real property was the separate property of the plaintiff. In *Richter* v. *Walker*, 36 Cal.2d 634 [226 P.2d 593], it was said at page 640: ''And, of course, as to the sufficiency of evidence to support findings, it is the time honored rule that all substantial conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the findings if possible.'' The finding of the court that the real property is the separate property of the plaintiff is supported by substantial evidence.

In view of the above conclusion, it is not necessary to consider appellant's further contentions that there was a resulting trust in his favor as to one-half of the real property, and that there was an oral antenuptial agreement to treat the real property as community property.

The judgment is affirmed. ·

Shinn, P. J., and Vallée, J., concurred.